In re Petition for DISCIPLINARY AC-TION AGAINST Paul L. SIMONSON, an Attorney at Law in the State of Minnesota, Respondent.

No. CO–82–1654.

Supreme Court of Minnesota.

April 5, 1985.

Michael J. Hoover, Dir. of Lawyers Professional Responsibility, William J. Wernz, St. Paul, for appellant.

William D. Flaskamp, Charles E. Spevacek, Minneapolis, for respondent.

PER CURIAM.

This is a disciplinary action brought by the Director of Lawyers Professional Responsibility against respondent Paul L. Simonson alleging one count of misconduct for misappropriation of client funds in violation of DR 1–102(A)(4), DR 1–102(A)(6) and DR 7–101(A)(3), Minn.Code of Prof. Resp. The Honorable Bertrand Poritsky, hearing the matter as supreme court referee, 336 N.W.2d 255, concluded that Simonson's conversion of client funds violated Disciplinary Rules DR 9–102 and DR 7–101(A)(3), Minn.Code of Prof.Resp., and that substantial mitigating circumstances existed. He recommended a public reprimand and fine of $5,000 payable to the Board of Lawyers Professional Responsibility as the appropriate sanction. The director requests suspension for a period of time. We must determine what discipline is appropriate under the facts and circumstances of the case.

The referee's findings of fact and conclusions of law, conclusive pursuant to Minn. R.Law.Prof.Resp. 14(d) because neither party ordered a transcript of the hearing, are as follows:

Upon all the files, records, and proceedings herein, including Respondent's Answer admitting the factual allegations of the Petition, the Referee makes the following FINDINGS OF FACT:

1. Respondent is a currently licensed Minnesota attorney who has been admitted to practice since October 20, 1972. Respondent maintains a solo practice in Minneapolis, concentrating on tax and business matters. Respondent is also a Certified Public Accountant and a former Internal Revenue Service agent.

2. From June 15, 1982, through July 6, 1982, Respondent appropriated to his own use client funds in an amount totaling $67,652.00. These funds had been on deposit in the trust account of Paul Simonson, Professional Association.

3. In October, 1982, in attempting to secure funds to make restitution, Respondent made minor misrepresentations of his financial condition to two banks.

4. From June 14, 1982, through July 1, 1982, Respondent issued several checks on his trust account, knowing that the account lacked sufficient funds to pay these checks.

5. In September, 1982, Respondent voluntarily disclosed to the Director of Lawyers Professional Responsibility ("the Director") that he had converted trust funds.

6. In September and October, 1982, Respondent voluntarily disclosed to all of his major clients that he had converted trust funds.

7. By December 3, 1982, Respondent had made complete restitution of the converted trust funds, paying interest thereon of 13.66%.

8. Respondent's statements to the Director have been accurate; Respondent has kept complete books and financial records of all of the defalcation and has not secreted any of those records from the Director or any other parties.

9. Respondent cooperated fully with the Director's investigation.

10. Respondent did not actively conceal the misconduct.

11. Respondent has made no false statements under oath, including the oath required under DR 9–104(B).

12. There was no expense or inconvenience to the clients involved in the invasion of the trust account.

13. The acts described in Findings 2, 3, and 4 above appear to be isolated incidents. Respondent's record otherwise reveals an attorney of good character. On the above Findings of Fact, the Referee draws the following CONCLUSIONS:

1. Respondent's conversion of client trust funds violated Disciplinary Rules DR 9–102 and DR 7–101(A)(3), Minnesota Code of Professional Responsibility.

2. Substantial mitigating circumstances existed.

█ Misappropriation of client funds by lawyers requires the strictest discipline, most commonly disbarment. *See, e.g., In re Austin*, 333 N.W.2d 633 (Minn.1983). We have imposed a less severe sanction, however, when substantial mitigating circumstances exist. See *In re Daffer*, 344 N.W.2d 382 (Minn.1984); *In re Shaw*, 298 N.W.2d 133 (Minn.1980); *In re Nurnberger*, 272 N.W.2d 914 (Minn.1978). The referee expressly concluded that substantial mitigating circumstances are present in this case. The circumstances the referee identified as mitigating were five:

1. Voluntary disclosure to the director even though the misconduct might otherwise have gone undetected;

2. Disclosure to all major clients;

3. Cooperation with the investigation;

4. Strong evidence of good character; and

5. Full restitution.

The question is whether these proven mitigating circumstances are substantial enough to warrant a lesser penalty than disbarment. The director acknowledges them to be sufficiently substantial to lessen the penalty to suspension but argues that no lesser penalty than suspension will serve to deter the bar from the serious misconduct of misappropriation of client funds. The director questions whether this court's intention that disciplinary sanctions be fair and consistent with prior decisions can be achieved by a sanction less than suspension. He cites *Daffer, In re Heffernan*, 351 N.W.2d 13 (Minn.1984), and *In re Scallen*, 269 N.W.2d 834 (Minn.1978) to suggest that this court has consistently imposed some period of suspension for comparable misconduct. A careful review of these cases, and the discipline meted out to deter the misconduct in each case, persuades us that the recommendations of the referee will suffice, under the facts and circumstances of this case, "to guard the administration of justice and to protect the courts, the legal profession, and the public." *In re Austin*, 333 N.W.2d 633, 634–35 (Minn.1983), quoting *In re Hanson*, 258 Minn. 231, 233, 103 N.W.2d 863, 864 (1960).

In the *Daffer* case, Daffer misappropriated over $172,000 mistakenly credited to him. He engaged in a complex get-rich scheme using the funds. He disclosed the misappropriations only after the irregularity was detected by the owner of the money. He was convicted of mail fraud. We held that, while Daffer's remorse, cooperation with authorities, and presumed unlikelihood of future ethical violations weighed against disbarment, his complex and extensive acts of misconduct, motivated by greed, called for a 5-year suspension. In *Scallen*, foregoing disbarment, we relied on mitigating factors similar to those found in *Daffer* to impose a 5-year minimum suspension for misconduct related to criminal convictions for theft and circulating false prospectuses. In *Heffernan*, we imposed a 3-month suspension and probation for a minimum of 3 years for conversion of between $7,000 and $9,000 from a client trust account over a 10-month period, failure to keep rudimentary trust account records, and commingling of personal and client funds. We noted that the misappropriation appeared to be "an isolated occurrence in an otherwise ethical practice." *Heffernan*, 351 N.W.2d at 15.

█ Each of these cited cases on which the director relies for the imposition of suspension involved multiple disciplinary violations involving either large sums of money or a repeated pattern of misconduct. Simonson's case is more nearly that of the attorney in *In re Shaw*, 298 N.W.2d 133 (Minn.1980). Shaw engaged in numerous acts of misconduct, including commingling and conversion of client funds, failure to keep adequate books and records, and false certification that records were in compliance with DR 9–103. He deposited a settlement of $10,000 in his own business and personal account and drew numerous checks against these funds. He held the

money in his account until the client made inquiry, then paid the full amount of the settlement over 2 months after the initial conversion and after the sum was due to be disbursed to the client. We declined to impose a suspension because:

[R]espondent's conversion consisted of a single event, and such temporary misuse of his client's funds was only for a short time, for which full restitution has now been made. Respondent otherwise has a good reputation in the community, both as a lawyer and as an involved citizen, and he has cooperated fully with the investigation by the Board of Professional Responsibility.

*Id.* at 135. We also consider respondent Simonson's conduct, which occurred on three occasions within a 3-week period, to be a single transaction, an episode which was an exception to an otherwise ethical professional life. *See Daffer,* 344 N.W.2d at 385. Respondent not only cooperated fully with the Board, he reported himself and made full disclosure to his major clients. The referee placed great emphasis on this act of voluntary disclosure, noting that the disclosure was truly uncompelled since, in his opinion, there was a likelihood that respondent's misconduct would not otherwise have been discovered. The respondent's good character was established by witnesses who, in the opinion of the referee, "seemed by and large an unsentimental lot." The lawyer in *Shaw* did not make a voluntary disclosure and failed to make restitution to his client by the time the settlement funds were due her. Respondent here did not injure or inconvenience his client in any way and repaid the trust account the entire amount with interest at an annual rate of 13.66% before it was due. Respondent also kept clear and accurate books and records, showing precisely the amount of the misappropriation and the dates of the invasions of the trust account.

We do not condone the reprehensible misconduct of conversion of client funds but we do find, in the facts of this case, substantial mitigating circumstances. We therefore, impose the following sanctions:

1. Respondent is publicly reprimanded.
2. Respondent is fined Five Thousand and no/100 Dollars ($5,000.00) payable to the Board of Lawyers Professional Responsibility.

It is so ordered.

COYNE, J., took no part.