**In re Antony F. GIL, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 94–BG–526.**

District of Columbia Court of Appeals.

Argued March 2, 1995.

Decided April 3, 1995.

Julia L. Porter, Asst. Bar Counsel, with whom Leonard H. Becker, Bar Counsel, and Michael S. Frisch, Sr. Asst. Bar Counsel, were on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda, with whom Barry E. Cohen was on the brief, Washington, DC, for Bd. on Professional Responsibility.

Timothy J. Battle, Washington, DC, for respondent.

Before STEADMAN, SCHWELB, and FARRELL, Associate Judges.

FARRELL, Associate Judge:

In this disciplinary proceeding, the Board on Professional Responsibility has recommended that respondent be disbarred for engaging in criminal conduct and "extremely serious acts of dishonesty." A Hearing Committee and the Board both concluded that respondent engaged in conduct which amounted to theft, as well as other dishonest acts, and thereby violated Rule 8.4(b) of the District of Columbia Rules of Professional Conduct (committing a criminal act that reflects adversely on the honesty, trust-worthiness or fitness of a lawyer) and Rule 8.4(c) (engaging in conduct that involves dishonesty, fraud, deceit, or misrepresentation).

On the other hand, the Board rejected the Committee's finding that, on the underlying facts found by the Committee and accepted by the Board, an attorney-client relationship existed between respondent and the complainant, Cecelia Cardenas. The Board therefore rejected the Committee's conclusion that respondent also violated Rule 1.15 by commingling, misappropriating, and failing to deliver promptly funds of clients or third persons possessed "in connection with the representation." Bar Counsel, in its submission to this court, argues that the Board overlooked evidence bearing upon the existence of an attorney-client relationship and, more importantly, treated that issue as one

of law contrary to the statement in *In re Lieber*, 442 A.2d 153, 156 (D.C.1982), that "[t]he existence of an attorney-client relationship is an issue to be resolved by the trier of fact," here the Committee. Bar Counsel also asks us to decide that Rule 1.15 may be violated by an attorney acting in a fiduciary capacity even apart from an attorney-client relationship. The Board responds that the issue of whether an attorney-client relationship existed on this record is a difficult one, and that we need not decide either that issue or the related one of whether an attorney-client relationship is a necessary predicate to a violation of Rule 1.15.

■ We agree with the Board that respondent violated Rules 8.4(b) and (c) and that his misconduct was grave enough to require disbarment. We therefore do not decide whether respondent acted in the course of an attorney-client relationship or whether the existence of that relationship is a pre-condition to a violation of Rule 1.15.[1]

### I.

Respondent and Ms. Cardenas had known each other for over fifteen years at the time of the events in question. On Sunday, September 8, 1991, Cardenas received a phone call from Ecuador, where her father Jose Cardenas lived, informing her that he was on the verge of death. Cardenas summoned respondent to her home to assist her in transferring bank funds held in four certificates of deposit to her joint bank account with her father and then to her personal account. That same evening, at Cardenas' home, Cardenas prepared two letters of instruction to banks to close the four CDs and to wire-transfer the funds to the joint account, as well as two letters instructing Riggs Bank to transfer funds from the joint account into her personal account.[2] Respon-

dent assisted Cardenas in drafting a power of attorney from her in favor of respondent.

Cardenas gave respondent a folder containing the four letters of instruction, the power of attorney,[3] six CDs, two of which were not covered by any of the enclosed letters, and a blank signed check to cover the cost of notarial fees. Over the next two days, respondent carried out Cardenas' instructions to close the four CDs and transfer the funds. In addition, he created another power of attorney and a letter to Chevy Chase Federal Savings Bank, both purporting to be from Jose Cardenas, and had these documents falsely notarized. The letter to Chevy Chase Bank instructed it to close one of the two CDs for which Cardenas had prepared no instructions, and to issue a check in that amount to the order of Cardenas and respondent as "her attorney." Using the power of attorney, respondent induced Standard Federal Savings Bank to close the final CD and issue a corresponding check to Cardenas and respondent.[4] He endorsed both his and Cardenas' names to the checks and deposited a total of $48,223.38 into his personal checking account. He also wrote Cardenas' blank check (intended to cover notary fees) to his personal order for $14,500 and deposited it in his own checking account.[5] He then used the funds to pay personal obligations and to purchase a new car, a BMW.

When Cardenas returned from Ecuador, respondent confessed that he had appropriated her money. He gave her a promissory note for the principal plus interest at the applicable CD rate. As of December 6, 1991, respondent had repaid the principal, though apparently he has paid no interest on the debt.

### II.

The Committee and the Board concluded that respondent's conduct amounted to larce-

---

1. The latter issue, in a context governed by former DR 9–103(A), is pending before this court in *In re Confidential (M.B.)*, No. 94–BS–886.

2. Cardenas signed the letters "Jose Cardenas."

3. Cardenas neglected to sign the power of attorney before leaving for Ecuador. Respondent had Cardenas' daughter sign Cardenas' name.

4. There is no equivalent letter to Standard Federal Bank in the record directing closure of the Standard Federal CD.

5. Respondent caused another $20,000 to be transferred from the joint account into Cardenas' personal account, presumably to mask the $14,500 debit.

ny or theft under District of Columbia law, and thereby violated Rule 8.4(b) of the Rules of Professional Conduct.[6] Respondent does not dispute that his conduct would constitute larceny under District law, but contends that the Board should have applied Virginia law because most of the relevant events occurred in Virginia, whereas none took place in the District. Under Virginia law, an intent permanently to deprive Cardenas of her property apparently would have been required to support a conviction for larceny. *See Skeeter v. Commonwealth,* 217 Va. 722, 232 S.E.2d 756, 758 (1977).[7] Yet, respondent argues, the Committee did not find that his intent was of this nature (to appropriate permanently) but instead that he intended "to appropriate the money to his own uses," for whatever duration. The Board rejected the factual premise of this argument, citing evidence that respondent withdrew funds from the Chevy Chase CD at one of the bank's District of Columbia branches, an act that would have subjected him to prosecution in the District under "continuing offense" principles. *See United States v. Baish,* 460 A.2d 38, 40–41 (D.C. 1983).

■ Respondent counters, correctly, that the record does not show clearly that he withdrew CD funds from a District branch of Chevy Chase Bank, but the point does not help him. Even if the District's criminal law were inapplicable,[8] Virginia law is not the only alternative "choice of law."[9] Respondent concedes, and the documentary evidence strongly suggests, that he closed and received checks for the two CDs in Maryland branches of Chevy Chase Bank and Federal Standard Bank. Maryland's crime of theft, like the District's, does not require proof of an intent permanently to deprive the owner of her property. Md.Ann.Code art. 27, §§ 340(c), 342(a) (1992).[10] Moreover, like the District of Columbia, Maryland recognizes that it may prosecute a crime under its law if any element of a "continuing offense" was committed within its boundaries. *State v. Jones,* 51 Md.App. 321, 443 A.2d 967, 971–72 (1982). In construing the phrase "criminal act" for purposes of Rule 8.4(b), this court properly may look to the law of any jurisdiction that could have prosecuted respondent for the misconduct. We therefore agree with the Board that respondent committed larceny or its statutory equivalent, and thus violated Rule 8.4(b).

With respect to the violation of Rule 8.4(c),[11] the Board concurred with the Committee's findings that

[r]espondent had no instructions from Ms. Cardenas to move the funds, and he certainly had no authority to deposit the funds in his personal account. Yet he created false documents ... to enable him to withdraw the CD funds, he deposited those funds in his personal checking ac-

---

6. Rule 8.4(b) provides that "[i]t is professional misconduct for a lawyer to ... [c]ommit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." In the District of Columbia, the crime of larceny is embodied in the statutory offense of "theft," which provides:

A person commits the offense of theft if that person wrongfully obtains or uses the property of another with intent:
(1) To deprive the other of a right to the property or a benefit of the property; or
(2) To appropriate the property to his or her own use or to the use of a third person.

D.C.Code § 22-3811(b) (1989). The crime is a felony if the value of the property obtained or used is $250 or more. *Id.* at § 22-3812(a).

7. By contrast, theft under District law "does not require an intent to appropriate property permanently." *Fredericks v. United States,* 306 A.2d 268, 270 (D.C.1973).

8. Although District law might not apply to the theft of the CD funds, there seems little question

it would apply to respondent's removal of the $14,500 from Cardenas' Riggs Bank account, since that account was undisputably located in a District bank.

9. We therefore express no opinion on whether respondent's conduct in fact would be beyond the reach of Virginia's crime of larceny.

10. Under Maryland law, to "deprive" a person of property

means to withhold property of another:
(1) Permanently; *or*
(2) *For such a period as to appropriate a portion of its value....*

Md.Ann.Code art. 27, § 340(c) (emphasis added).

11. Rule 8.4(c) states that "[i]t is professional misconduct for a lawyer to ... [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

count, and he used the funds for his own personal purposes. Respondent's conduct was obviously dishonest ... [and] was also deceitful, as he relied on false documents [which he had had falsely notarized] and misrepresented his authority to Chevy Chase and Standard Federal banks in order to obtain the funds on deposit there.

"[A]cts unrelated to the practice of law may nonetheless violate [Rule 8.4(c) ]." *In re Kennedy*, 542 A.2d 1225, 1228 (D.C.1988). Respondent's argument that he did not violate Rule 8.4(c) because "he did not think Ms. Cardenas would object to giving him a loan," did not attempt to conceal his actions from her, and repaid the money is meritless. As the Committee found, he "used over $60,000 of funds entrusted to him by Ms. Cardenas for his own purposes without her knowledge or consent." And his entire conduct in transferring the funds to his account was marked by deceit. We agree with the Board that respondent violated Rule 8.4(c) as well.

### III.

D.C.Bar R. XI, § 9(g), requires this court to "adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be un-

warranted." Disbarment in this case yields no such inconsistency or injustice.[12] Indeed, had respondent been convicted of felony theft, disbarment would have been automatic under D.C.Code § 11–2503(a) (1989). *See In re Boyd*, 593 A.2d 183, 184 (D.C.1991). As the Board observed, "[r]espondent's betrayal of the trust of his friend ... shows him to be so wanting in his fundamental awareness of right and wrong that his continued membership in the Bar undermines its integrity and poses a threat to future clients." *See In re Minninberg*, 485 A.2d 149, 151 (D.C.1984) ("Misappropriation ... of a client's (or other) funds ... demonstrates absence of the basic qualities for membership in the legal profession....") (citation and internal quotation marks omitted).

Therefore, it is ORDERED that respondent, Antony F. Gil, shall be disbarred from the practice of law in the District of Columbia effective thirty days from the date of this opinion.

---

**12.** *See, e.g., In re Dorsey,* 469 A.2d 1246 (D.C. 1983) (disbarment ordered where attorney violated parallel provisions of the Code of Professional Responsibility (DR 1–102(A)(3) and (A)(4)) by defrauding someone of $7,000 outside the scope of a representation and leaving town with the money).