**In re Randy A. WEISS, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 00–BG–493.**

District of Columbia Court of Appeals.

Argued March 6, 2001.

Decided Dec. 11, 2003.

Abbe David Lowell, with whom Andrew N. Gentin, Washington, DC, was on the brief, for respondent.

Michael S. Frisch, Senior Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before STEADMAN, RUIZ and WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

The Board on Professional Responsibility (the "Board") recommended that respondent, Randy A. Weiss, be suspended from the practice of law for a period of three years, with one year suspended in favor of probation for a period of two years or until his therapist concludes that therapy is no longer necessary, for illegally taking funds from his law firm. The suspension, does not require a showing of fitness. Weiss filed an exception to the Board's Report and Recommendation arguing that a suspension for more than one year is too harsh a sanction in light of his mitigating circumstances. Despite Weiss' claims, we adopt the recommendation of the Board.

## I.

In May of 1997, Weiss notified his law firm and the Bar Counsel that he had improperly diverted funds from the firm. Specifically, Weiss admitted that in a number of transactions he handled on behalf of the firm between April 1993 and May 1997 he diverted portions of title insurance fees from the firm's escrow accounts to his own personal account. He obtained the funds either by having checks made payable directly to him or by placing the fees into one of the firm's escrow accounts over which he had effective control. Weiss took funds from the firm on fifty-four occasions totaling $676,465.99. Weiss placed those funds in a money market account the existence of which was not disclosed to anyone. Ultimately, Weiss repaid the firm the entire amount of money that he had improp-

erly obtained. Based on Weiss' admissions, Bar Counsel filed a Specification of Charges alleging that Weiss had violated DISTRICT OF COLUMBIA R. OF PROF'L CONDUCT 8.4(b) and (c) (2001).[1]

On March 18 and May 6, 1998, hearings were held and Weiss offered the following in mitigation of his charges. First, Weiss noted that he voluntarily notified the firm of his misconduct. Second, two psychiatrists concluded that Weiss' actions were the result of a psychological need for security born of his father's depression-era fear of poverty. Third, neither psychiatrist believes that Weiss will likely repeat this conduct. Finally, Weiss helped the firm institute new procedures to help reduce the risk of future funds being diverted from the firm.

On December 29, 1998, the Hearing Committee issued its report stating that misconduct had been established and that Weiss had violated Rule 8.4(b) and (c). Despite the seriousness of the misconduct, however, the Hearing Committee, persuaded by the evidence offered in mitigation, recommended that Weiss be suspended for one year without a fitness requirement and then placed on probation for two years. The recommended probation required Weiss to submit quarterly certificates from his therapist confirming his good faith participation in therapy.

The Board agreed with the Hearing Committee that Weiss violated Rule 8.4(b) and (c), but recommended that Weiss be suspended from the practice of law for a period of three years with one year suspended in favor of probation for two years or until his therapist advised Bar Counsel that therapy was no longer necessary. The only condition of probation was that

---

1. Rule 8.4 states: "It is professional misconduct for a lawyer to: ... (b) Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects; (c) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation...."

Weiss' treating therapist submit quarterly certificates confirming his continued good faith participation in therapy.

## II.

Weiss contends that the Board's recommendation that he be suspended for more than one year is excessive and fails to adequately take into account the mitigating factors that were presented on his behalf. When reviewing a recommended disciplinary sanction against an attorney, this court must adopt the Board's recommended sanction "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." *See* D.C. Bar R. XI, § 9(g)(1). When deciding whether there is the possibility for inconsistent dispositions, this court should compare "the gravity and frequency of the misconduct, any prior discipline, and any mitigating factors such as cooperation with Bar Counsel, remorse, illness, or stress" between the present case and past decisions. *In re Steele*, 630 A.2d 196, 199 (D.C.1993). In determining whether a particular recommendation is warranted, this court should examine "the nature of the violation, the mitigating and aggravating circumstances, [and] the need to protect the public, the courts, and the legal profession." *In re Haupt*, 422 A.2d 768, 771 (D.C.1980).

While the evidence offered in mitigation in this case is unique among those cases where attorneys have improperly diverted funds, *see In re Appler*, 669 A.2d 731, 741 (D.C.1995) (disbarring an attorney for asking clients to bill him directly rather than the firm); *see also In re Gil*, 656 A.2d 303, 306 (D.C.1995) (disbarring an attorney who took funds from a friend outside the attorney-client context), the Board determined that Weiss should neither be disbarred nor receive a suspension for one year or less, as recommended by the Hearing Committee, but should be suspended for three years with one year suspended in favor of two years probation and no fitness requirement. The question before us is whether the Board's recommended sanction is inconsistent with prior dispositions for comparable conduct or is otherwise unwarranted under the circumstances.

Weiss argues that in other cases where it was a law firm's funds that were diverted, this court supported the imposition of lesser sanctions than those recommended by the Board in this case, and, therefore, the Board's recommendation should be rejected as inconsistent with prior dispositions for comparable conduct. As support for this proposition, Weiss relies on two reciprocal disciplinary cases, *In re Paragano*, 747 A.2d 1189, 1190 (D.C.2000) and *In re Berg*, 694 A.2d 876, 877 (D.C.1997). In both of those cases the respondents were suspended for one year or less for diverting funds from their law firm. This court, however, has never ruled that diversion of funds involving a law firm require a lesser sanction. Neither *Paragano* nor *Berg* can be cited for that proposition.

*Paragano, supra*, was a New Jersey case in which the respondent was suspended for six months for writing numerous checks from his law firm business account for personal expenses without his partner's authorization, and for mischaracterizing the disbursements in the firm's records in order to conceal his actions. In adopting the Board's recommendation that we impose identical reciprocal discipline of a six month suspension, we noted that the New Jersey court specifically found that the evidence presented to them failed to establish that the attorney actually stole money from the firm and, thus, they ruled that the attorney was only guilty of mischaracterizing personal disbursements. Because of that court's specific finding that there was no actual theft, we found that the

discipline imposed, a six month suspension, was reasonable under the circumstances and not inconsistent with our prior decisions.

In *Berg, supra,* the respondent was suspended for one year after it was determined that he had diverted law firm funds for his own personal use. While the misconduct of Berg, in that case, was substantially similar to the misconduct of Weiss, here, their personal circumstances differ significantly. In *Berg,* the respondent agreed to permanently retire from the practice of law after serving the court imposed suspension, if the court would agree not to disbar him. Based primarily on his promise to permanently retire, and in deference to what the Court of Appeals for the State of Maryland acknowledged was a long and distinguished career, the court agreed to suspend him for one year and not disbar him. Because Berg's agreement to permanently retire was tantamount to disbarment, we agreed to impose identical reciprocal discipline. Unlike Berg, however, Weiss clearly intends to return to the practice of law once his suspension is concluded. As such, his circumstances are clearly distinguishable from those presented in *Berg.*

Finally, Weiss argues that even if this court finds his law firm diversion argument unpersuasive, he has presented compelling mitigating circumstances that should reduce the severity of any proposed sanction for his conduct to a suspension for no more than one year. Weiss relies primarily on our decision in *In re Hutchinson,* 534 A.2d 919 (D.C.1987), as support for this proposition. In *Hutchinson,* the respondent engaged in illegal insider trading and then lied to the Securities and Exchange Commission to cover it up. He was suspended for one year for his untruthful testimony.

Weiss contends that the mitigating circumstances relied upon by the Board in recommending a one year suspension in *Hutchinson* were almost identical to the mitigating circumstances offered here. As a result, he reasons that the recommended sanction in this case is inconsistent with our prior decisions. While Weiss is correct that the mitigation evidence offered here is similar to the mitigation evidence presented in *Hutchinson,* that is the only similarity that exists between the two cases. Hutchinson's conduct, unlike this case, did not involve any breach of his fiduciary obligation to his clients or to his law partners. Thus, Weiss' contention, that this court should look to *Hutchinson* for guidance because of the similarities between the mitigating circumstances presented in both cases, completely ignores the underlying conduct which gave rise to the ethical violation. Our responsibility is to ensure that the Board is not recommending inconsistent dispositions for "comparable conduct." It is in that context that we look to see whether mitigating factors are being consistently applied. In the absence of comparable conduct, a mitigation analysis is of little significance.

While Weiss took significant steps to mitigate his misconduct by self-reporting his theft; making efforts to ensure that the opportunity to misappropriate money from his firm and other firms will be more difficult in the future; and seeking counseling to help him address the psychological problems that led him to his ethical lapse, the fact remains that Weiss unlawfully diverted a substantial amount of money from his law firm over a significant number of years and a sanction of one year or less would be wholly inconsistent with the discipline imposed on others for comparable conduct. *See Appler, supra,* 669 A.2d at 731; *Gil, supra,* 656 A.2d at 303.

Given those prior precedents and the facts of this case, the Board stated that it did not come easily to the conclusion that Weiss should not be disbarred. Ultimately, however, the fact that Weiss self-reported his violation led the Board to conclude that the sanction should be reduced from disbarment to three years suspension with one year suspended. Further, the Board, obviously influenced by the psychological evidence presented by Weiss, decided not to require a showing of fitness as a condition of Weiss resuming his law practice. Both of these accommodations by the Board are significant and were warranted under the circumstances.

Accordingly, it is ORDERED that respondent, Randy A. Weiss, is suspended from the practice of law in the District of Columbia for a period of three years with one year suspended in favor of probation for two years or until his therapist advises Bar Counsel that therapy is no longer necessary. The only condition of probation is that quarterly certificates from Weiss' treating therapist be submitted confirming his continued good faith participation in therapy. Finally, we direct respondent's attention to the requirements of D.C. BAR R. XI, § 14 and their effect on his eligibility for reinstatement. *See* D.C. BAR R. XI § 16(c).

*So ordered.*

RUIZ, Associate Judge, dissenting.

This is a difficult case that compels us to consider the purposes of our disciplinary system for attorneys and presents us with an opportunity to choose a sanction to further those goals. Bearing in mind that the overarching purpose of the discipline system is not to punish but to enhance confidence in the legal profession and protect clients and the community affected by a lawyer's actions, I conclude that on the facts of this case, not only the individual attorney but the legal profession as a whole would be better served by a more lenient sanction that places a meaningful incentive on voluntary disclosure of serious lawyer misconduct.

My dissent has nothing to do with disagreement over the Board's or the majority's characterization of the gravity of Randy Weiss's misconduct. In fifty-four transactions over a period of three years, he embezzled hundreds of thousands of dollars that belonged to his firm. He kept the money in a personal money market account and paid taxes on the interest earned, treating it as his own. But for the unusual fact that he did not touch the funds, Weiss's conduct is sadly reminiscent of other thefts from people to whom lawyers owe a fiduciary responsibility. His conduct is criminal and involves dishonesty, and therefore violates Rule 8.4(b) and (c) of the Rules of Professional Responsibility.

What takes this case out of the ordinary is what happened next. Filled with remorse, Weiss consulted his rabbi and, on his advice, informed his partners about what he had done. He then repaid the money (which, as mentioned, he had not used), foregoing the 17.2% share to which he would have been entitled had the firm received the fees in the normal course. He also paid for an outside audit and helped to implement procedures to prevent similar future occurrences. The record indicates that, but for his voluntary disclosure, Weiss's misconduct would not have been revealed.[1] Weiss ceased to be a part-

---

1. Weiss acted not only as counsel but as title insurance agent, and was compensated in both capacities. In his testimony, Weiss explained that, unlike legal fees, the cost of title insurance is not shown on the settlement statement. Generally, the licensed title insurance agent who conducts the closing retains for his or her account a portion of the title

ner of the firm after his disclosure. He remains associated with the firm, however, and his former partners have indicated that they will review his status upon conclusion of these proceedings. Weiss has been examined by two psychiatrists, both of whom advise that his actions were motivated by extreme insecurity, that he has responded well to treatment and that he is unlikely to repeat his misconduct. The Hearing Committee similarly found that Weiss is unlikely to engage in future misconduct.

Weiss's decision to disclose his misconduct voluntarily is not only unusual as a matter of fact; it is also without precedent in our disciplinary cases. Rejection of the Board's recommendation in this case, therefore, will not "foster a tendency toward inconsistent dispositions for comparable conduct" because we simply have never had a case like this one.[2] D.C. Bar R. XI, § 9(g). The majority adopts the recommended sanction of suspension for three years with one year suspended in favor of probation for two years or until

his therapist advises that therapy is no longer necessary. For the reasons that follow, I conclude that the recommended sanction is inconsistent because it is too harsh in comparison to other cases. Most important, the recommended sanction is also unwarranted because it does not adequately serve the interest of promoting voluntary disclosure. Instead, I would suspend the entire recommended three-year suspension in favor of probation conditioned on the continuation of therapy until Weiss's therapist advises that therapy is no longer required.

The principal case where we have discussed voluntary reporting of misconduct is *In re Hutchinson*, 534 A.2d 919 (D.C. 1987) (en banc). After buying call options on a tip from a friend, Hutchinson communicated the inside information about an impending tender offer. He then lied under oath in the course of an SEC investigation to cover up the insider source of the information and his own actions. *See id.* at 921. He later recanted his misstatements and told the truth. In a civil en-

insurance premium as a commission (in this case 80 percent) remitting the rest as to the title insurance company for its risk associated with the transaction. Whenever Weiss acted in his capacity as real estate lawyer and title insurance agent, an invoice would be generated by the law firm for legal fees associated with the transaction, and the firm's accounting system would show an account receivable in that amount. That bill would either be paid directly to the firm, or, if paid to Weiss, would be turned over to the firm. An invoice, however, was not generated by the firm for the title insurance commission, which was owed by the client to Weiss—not the firm—as agent. As a result, the firm's billing system would not show an account receivable for the title insurance commission. Under this system Weiss easily was able to remit the legal fees to the firm and retain the title insurance commission for himself in approximately 30 percent of the cases without being detected.

2. The cases relied on by the Board and the majority do not approximate the voluntari-

ness and candor that Weiss has shown and, in some cases, were the exact opposite. *See In re Appler*, 669 A.2d 731 (D.C.1995) (disbarring attorney, who suffered from bipolar disorder, caught after he embezzled more than 1.1 million from his law firm over a five-year period and there was possibility of relapse into future misconduct); *In re Gil*, 656 A.2d 303 (D.C.1995) (noting that "respondent's betrayal of the trust of a friend. . . . show[ed] him to be wanting in his fundamental awareness of right and wrong"); *In re Goffe*, 641 A.2d 458 (D.C.1994) (noting that attorney, who lied and manufactured evidence, did not "understand the impropriety of his conduct").

I also do not think that the cases on which Weiss relies, *In re Berg*, 694 A.2d 876 (D.C. 1997), and *In re Paragano*, 747 A.2d 1189 (D.C.2000), are particularly useful because they are reciprocal discipline cases in which we defer to the sanction imposed by the original disciplining jurisdiction.

forcement action brought by the SEC, Hutchinson agreed to surrender $72,000 in profits. *See id.* He also plead guilty to a misdemeanor under the Securities Exchange Act of 1934, 15 U.S.C. § 78 ff (a) (1982). *See id.* In the ensuing discipline case, we noted that his eventual cooperation mitigated his offense and suspended him for one year. *See id* at 924–25.

The majority dismisses the relevance of the more lenient sanction in *Hutchinson* on the ground that the underlying misconduct in the two cases is different. But the differences are immaterial on the question of sanction. Although Hutchinson's untruthful testimony and disclosure of inside information and Weiss's embezzlement of firm funds are different, both involve dishonesty and are punishable as crimes [3]; both constitute violations of the rule against engaging in dishonest conduct or committing a criminal act that impugns a lawyer's honesty, trustworthiness or fitness as a lawyer.[4] Moreover, insider trading is a type of theft from investors who do not have the benefit of inside information to avert loss or realize gain. *See Hutchinson*, 534 A.2d at 921 (noting that in consent order settling the SEC civil enforcement action Hutchinson's profits from insider trading were distributed to sellers of stock options). Thus, I disagree that the misconduct in the two cases is not comparable. What is significantly different is that nothing in *Hutchinson* suggests that the insider trading would have gone undetected, as the SEC immediately mounted an investigation. Unlike Weiss, who reported his misconduct to his firm and to Bar Counsel under circumstances

where it was not likely to be discovered, Hutchinson made a tactical decision to disclose only under pressure of an SEC investigation. If Hutchinson was suspended for one year in a situation where he disclosed in the course of an impending investigation, Weiss, whose disclosure was truly voluntary, should not be suspended for two additional years. To do so is to apply inconsistent sanctions.

The recommended sanction is also "unwarranted" in light of "the nature of the violation, the mitigating and aggravating circumstances, the need to protect the public, the courts and the legal profession," *In re Haupt*, 422 A.2d 768, 771 (D.C.1980), and the moral fitness of the attorney. *See In re Smith*, 403 A.2d 296, 303 (D.C.1979). The violation, though admittedly grave, has been fully cured. No client funds or trust, the prime concern of the disciplinary system, were involved. The direct victims of the misconduct, Weiss's firm and partners, have been made whole financially, and continue to include him in their law practice. Weiss's moral fitness, is evidenced by his decision to self-report, the actions he took to correct his misconduct, and the absence of any prior or anticipated problem with the discipline system.

So the remaining question is what sanction will best protect the public, the legal profession and the courts. I do not dispute that a valuable function of sanction is its deterrent value, and that a sanction of suspension might in routine cases deter others from engaging in similar conduct. But fidelity to the facts of this case re-

---

**3.** In *Hutchinson* we noted that lying to the SEC is a felony punishable by imprisonment for five years or a fine of $10,000, or both, under 18 U.S.C. § 1001 (1982), and that lying under oath is perjury under 18 U.S.C. § 1621 (1982) and D.C. code § 22–2501 (1981). *See Hutchinson*, 534 A.2d at 924.

**4.** Here, the applicable provision is Rule 8.4(b) and (c). The predecessor at issue in *Hutchinson* was D.R. 1–102(A).

quires us to ask the narrower question whether misconduct that would go undetected but for voluntary disclosure, as here, will be deterred by the prospect of suspension. If one assumes that the misconduct would remain undetected, the premium is on encouraging voluntary disclosure and full restitution. I rather think that will be more likely at the prospect of a significantly lessened sanction that does not imperil the ability to practice law.

If deterrence depends on the *expected* value of punishment, calculated as the severity of that punishment multiplied by the probability of apprehension and conviction, as the probability of detection increases, a less severe penalty must be used to achieve the same level of effective deterrence. *See* RICHARD A. POSNER, ECONOMIC ANALYSIS OF LAW 204–07 (3d ed. 1986). Typically the probability of detection is less than one—escape is always possible. For an individual who self-reports a violation, however, the probability of detection is one, and to achieve the same level of *effective* deterrence as those who attempt to avoid punishment, the severity of the punishment must be lessened. If not, no one would self-report, because a rational individual would always prefer to secrete his crime and suffer the possibility of detection rather than confess that crime and face the certainty of the identical penalty. An individual who self-reports therefore should always be punished less severely than one who does not, assuming comparable violations.

Weiss, of course, made full disclosure out of a sense of remorse and not because of an expectation gleaned from our cases that he would escape serious sanction. But if we could always rely on a prodding conscience, the investigations, adjudications and sanctions of the disciplinary system would be largely unnecessary. In the discipline system, we do not stand in judgment of lawyers' souls and impose punishment in some absolute sense. Our job is more prosaic: to evaluate attorney conduct in light of the Rules, and assess sanctions that further the goals of protecting clients and promoting confidence in the Bar. *See In re Reback*, 513 A.2d 226, 231 (D.C.1986) (an banc) ("In all cases, our purpose in imposing discipline is to serve the public and professional interests we have identified, rather than to visit punishment upon an attorney"). Consequently, our approach should be pragmatic and logical.

The imposition of probation in this case not only would recognize—as have other jurisdictions [5]—that Weiss's self-disclosure and full restitution merit leniency, but also would provide an opportunity to establish a real incentive for future voluntary self-disclosure and restitution, which would foster integrity in the profession, enhance public confidence and ease the burden at all levels of the discipline system: Bar Counsel, the BPR and this court. We have the discretion to do so. *See In re Banks*, 709 A.2d 1181, 1182 (D.C.1998) (explaining that "nothing in our decisions prohibits the Board from recommending probation in a

---

5. The Minnesota Supreme Court has declined to suspend attorneys, where the misconduct has come to light as a result of full voluntary disclosure. *See In re Nurnberger*, 272 N.W.2d 914 (Minn.1978) (placing on supervised probation an attorney who converted large sums of money from clients' trust fund to own use over a period of three years, but then remitted funds to clients and disclosed to all affected clients and discipline system, in absence of investigation); *In re Simonson*, 365 N.W.2d 259 (Minn.1985) (ordering public reprimand and fine for lawyer who misappropriated $67,652 in client funds, which usually is sanctioned by disbarment, in case where lawyer voluntarily disclosed even though misconduct might have gone undetected, cooperated with investigation, made restitution and had good character).

non-disability case"). I would not miss that opportunity.