**In re Gerald R. ROBBINS, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 95–BG–473.**

District of Columbia Court of Appeals.

Argued Dec. 5, 1995.
Decided July 3, 1996.

Ed Wilhite, for respondent.

Elizabeth A. Herman, Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel, was on the brief, for petitioner.

Before WAGNER, Chief Judge, and STEADMAN and RUIZ, Associate Judges.

PER CURIAM:

The Board on Professional Responsibility recommends that Gerald R. Robbins be disbarred from the practice of law in the District of Columbia. Robbins has been convicted in the United States District Court for the Eastern District of Virginia of committing a drug-related offense. Disbarment by this court is required where an attorney has been convicted of a crime of moral turpitude. D.C.Code § 11–2503(a) (1995). We hereby conclude that Robbins has been convicted of a crime of moral turpitude, and further conclude that his offense adversely reflects on his practice of law, in violation of Disciplinary Rule 1–102(A)(3). We disbar him accordingly.

Robbins, a former Assistant United States Attorney who left the Department of Justice to pursue private practice, pled guilty in federal court to a violation of 21 U.S.C. § 843(b), which forbids the use of a telephone "in committing or in causing or facilitating the commission of any act or acts constituting a felony" under specified subchapters of the Drug Abuse Prevention and Control Act. In this case, the felony was attempted possession of cocaine with the intent to distribute it. *See* 21 U.S.C. § 846. The case against Robbins arose when Robbins, who was appointed to represent Kenneth Baez under the Criminal Justice Act in the U.S. District Court for the District of Columbia, agreed to assist Baez, who was incarcerated, and a person Robbins believed to be Baez's wife in transporting what Robbins was told was a substantial amount of cocaine from Miami, Florida, to the Northeast. Specifically, Robbins agreed to provide Baez's wife with assistance in obtaining and using a storage facility for the cocaine in Northern Virginia, to help her rent a car for the purpose of transporting the narcotics, and also offered to rent her Robbins's deceased father's estate in Connecticut, at least in part for similar illicit purposes. The person with whom Robbins communicated and met regarding the narcotics transportation was in reality an undercover agent of the Federal Bureau of Investigation, who was enabling Baez to seek a downward departure under the federal sentencing guidelines from Baez's sentence after a guilty plea, based on cooperation with law enforcement. Robbins agreed to provide Baez and his putative wife this assistance based primarily on two expectations: first, that rather than bill the court for his legal services, Robbins would be able to obtain a fee of $10,000 to $20,000 for assisting Baez with Baez's federal-court plea and sentencing, and second, that Baez would additionally lend Robbins $20,000 to help Robbins meet various private financial obligations.

The Board referred the matter to a Hearing Committee to determine whether the offense to which Robbins pled guilty was an offense involving moral turpitude, thereby triggering automatic disbarment under § 11–2503(a). The Board specifically declined to conclude that the offense to which Robbins pled guilty was one of moral turpitude *per se* under the standards articulated in *In re Colson*, 412 A.2d 1160 (D.C.1979), and asked the Committee to determine whether Robbins's case was characterized by moral turpitude on its facts.[1] The Committee conducted an evidentiary hearing at which a government

---

1. The court in *Colson* defined an act of moral turpitude as an act that (1) "offends the generally accepted moral code of mankind," (2) is one "of baseness, vileness, or depravity in the private and

agent, as well as Robbins, testified. The Committee thereafter concluded that the facts which Robbins verified after the government proffer at his plea proceeding, and the facts as adduced at the hearing, demonstrated by clear and convincing evidence that Robbins had committed a crime of moral turpitude and must be disbarred.[2] In this case, the Committee specifically relied on "the large amount of cocaine involved in the scheme," which was about 50 kilograms, eight to be transported personally by Baez's supposed wife, Robbins's "actual involvement in the scheme to store the cocaine for distribution later," and Robbins's involvement in a "significant drug scheme arising out of an attorney-client relationship" in concluding that Robbins's conviction had met the requirements of the statute. A court record or docket entry "of a plea of guilty or nolo contendere by an attorney to a charge of any crime, shall be conclusive evidence of the commission of that crime in any disciplinary proceeding based thereon." D.C. Bar Rule XI, § 10(f).

We agree that the facts established before the Hearing Committee constitute acts of moral turpitude of which Robbins has been convicted and for which, under the statute,

he must be disbarred. *See In re Mendes,* 598 A.2d 168 (D.C.1991) (disbarring attorney under § 11–2503(a) for possessing cocaine with intent to distribute); *see also In re Lobar,* 632 A.2d 110 (D.C.1993) (holding that conspiracy to commit an offense of moral turpitude inherently involves moral turpitude). Robbins's arguments to the contrary, namely, that Robbins was not genuinely optimistic that Baez was a reliable drug trafficker or that any cocaine would actually materialize, and alternatively, that Robbins's alleged financial need mitigated the nature of his crime as one involving moral turpitude, are unavailing.

We also agree with the Board on Professional Responsibility that the connection between Robbins's offense and his representation of Baez adequately establishes a violation of Disciplinary Rule 1–102(A)(3), which forbids the commission of illegal conduct involving moral turpitude that adversely reflects on Robbins's fitness to practice law. Robbins' illegal actions were taken as an attorney in the course of his representation of Baez and were partially for the purpose of securing payment of his attorney fees. In so finding, we reject Robbins's contention that the Disciplinary Rule violation should not be found where

---

social duties which a man owes to his fellow men or to society in general, contrary to the accepted and customary rule of rights and duty between man and man;" or (3) is "[c]onduct contrary to justice, honesty, modesty or good morals." 412 A.2d at 1168.

2. The statement of facts to which Robbins agreed at his plea were as follows:

On August 4, 1990, at approximately 6:07 p.m. in the Eastern District of Virginia, defendant Gerald Robbins had a telephone conversation with an undercover agent of the Federal Bureau of Investigation who he believed to be Maritsa also known as "Mari." The conversation concerned "Mari's" arrival in the Alexandria area with a large quantity of cocaine.

Gerald Robbins is an attorney practicing in the District of Columbia. Maritsa is the wife of a client that Gerald Robbins represents in a criminal case. The client is a confidential F.B.I. informant. In prior conversations individually with his client and "Mari," Gerald Robbins understood that "Mari" was coming to the Alexandria area with a significant

amount of cocaine and large amounts of cash. Gerald Robbins agreed to help "Mari" when she arrived in the area in order to accommodate his client and thereby increase the likelihood that he would actually obtain payment of a representation fee of ten thousand dollars and a loan of twenty thousand dollars.

During the telephone conversation of August 4, 1990, Gerald Robbins informed "Mari" that he had checked into storage facilities for temporary storage of the cocaine and had obtained a lock for this purpose. He informed her that he had arranged for a car rental and had reserved time on Monday, August 6, 1990, the date of her arrival, to take care of all the things they had to do.

On August 6, 1990, Gerald Robbins met "Mari," the undercover F.B.I. agent, at her hotel. They discussed the payment of money and the storage of the cocaine. Gerald Robbins and "Mari" then left the hotel room. Gerald Robbins was supposed to follow "Mari" to a car rental agency where he would rent a car for her and then they were to proceed to the storage facility to store the cocaine. Gerald Robbins was placed under arrest in the parking lot of the hotel.

his criminal plans were not successfully executed, and where his offense arose because Robbins had advised Baez to provide useful information to the F.B.I. in order to obtain a downward departure at Baez's federal sentencing.

We hold that the respondent, Gerald R. Robbins, is hereby disbarred from the practice of law in the District of Columbia.[3] D.C. Bar Rule XI, § 14(f).

*So ordered.*

---

3. In light of our disposition, and because the Board did not address the issues, we do not reach the questions whether Robbins should be reciprocally disciplined based on his disbarment in other jurisdictions, including Virginia, pursuant to D.C. Bar Rule XI, § 11, or whether the Board was correct in declining to find Robbins's offense to be one of moral turpitude *per se*.