## In re Michael J. RIGAS,

## A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 317909).

### No. 06–BG–437.

District of Columbia Court of Appeals.

Decided Dec. 9, 2010.

---

Before REID and OBERLY, Associate Judges, and NEWMAN, Senior Judge.

OBERLY, Associate Judge:

■ This disciplinary matter involves a recommendation from the Board on Professional Responsibility (the "Board") that we adopt the negotiated discipline between Michael Rigas and Bar Counsel. The case presents an issue of first impression, to wit, whether a criminal conviction referred to the Board by this court for an inquiry regarding moral turpitude may be the subject of negotiated discipline. Having con-

sidered the careful, thorough guidelines put forth by the Board to ensure that the process is not abused, as well as the efficiency likely to be gained by foregoing a contested hearing when neither Bar Counsel nor the respondent believes one is necessary, we hold that it may. We also adopt the Board's recommendation regarding the negotiated discipline and sanction at issue in this case.

## I. Facts and Procedural Background

On November 23, 2005, Rigas pled guilty in the United States District Court for the Southern District of New York to one count of violating 47 U.S.C. § 220(e) (2000), which prohibits willfully making any false entry in the books, accounts, records, or memoranda of any carrier subject to Federal Communications Commission regulation, or willfully neglecting to make "full, true and correct entries." Rigas reported his conviction to Bar Counsel on March 10, 2006. On August 3, 2006, this court suspended him from the practice of law pursuant to D.C. Bar R. XI, § 10(c), and directed the Board to institute a formal proceeding for the purpose of determining what final discipline should be imposed, and to review Rigas's offense to decide whether it involved moral turpitude within the meaning of D.C.Code § 11–2503(a) (2001).

In October 2006, the Board determined that Rigas's crime did not involve moral turpitude *per se,* and referred the case to a Hearing Committee to determine if factual evidence of moral turpitude existed. In April 2008, Bar Counsel filed a Specification of Charges against Rigas, alleging violations of D.C. Bar R. XI, § 10(b) (because he committed a "serious crime" as defined by that subsection), Rule 8.4(b) of the District of Columbia Rules of Professional Conduct (because he "committed a criminal act that reflects adversely on [his]

honesty, trustworthiness or fitness as a lawyer in other respects"), and Rule 8.4(c) (for engaging "in conduct involving dishonesty, fraud, deceit and/or misrepresentation"). Bar Counsel did not allege that Rigas had committed a crime of moral turpitude.

In November 2008, before the Hearing Committee had conducted the moral turpitude hearing, Bar Counsel and Rigas submitted a petition for negotiated discipline. Rigas admitted in the petition "that his conduct violated the ethical rules" listed in Bar Counsel's Specification of Charges, and both Rigas and Bar Counsel agreed "that the sanction to be imposed is a one-year suspension, *nunc pro tunc* to January 25, 2007, the date that [Rigas] filed the affidavit required by D.C. Bar Rule XI, § 14(g)." Bar Counsel advised that it did not believe it could establish that Rigas's crime involved moral turpitude. Bar Counsel and Rigas also sought to vacate the Board's October 2006 order that referred the case to a Hearing Committee.

## II. Proposed Guidelines

 In response to the Petition for Negotiated Discipline, the Board issued an order on March 11, 2009, that established guidelines for handling such cases and instructed Bar Counsel to "pursue vigorously any case in which moral turpitude may reasonably be proven." The Board also required that the Hearing Committee be "satisfied, after independent consideration of the record, that all reasonable avenues of investigation have been pursued and that the evidence of moral turpitude is clearly insufficient...." To assist the Hearing Committee in reaching its decision, the Board instructed Bar Counsel to "certify ... the following elements: (1) that the crime does not involve moral turpitude *per se;* (2) that Bar Counsel has exhausted all reasonable means of inquiry to find proof in support of moral turpitude,

and explaining those efforts; (3) that Bar Counsel does not believe that there is sufficient evidence to prove moral turpitude on the facts; (4) that all of the facts relevant to a determination of moral turpitude are set forth in the petition; and (5) that any cases regarding the same or similar offenses have been cited in the petition." The Board also required that the petition specifically articulate "the facts relating to moral turpitude and the basis for Bar Counsel's view that no probable cause exists to charge moral turpitude."

Regarding the specifics of Rigas's case, the Board stayed its October 2006 order referring the matter to a Hearing Committee for a formal hearing, and instructed Bar Counsel and Rigas to submit an amended petition for negotiated discipline that conformed with the new guidelines. The parties filed an amended petition in April 2009, in which Bar Counsel certified that it "could not prove that [Rigas's] conduct involved moral turpitude on the facts" and summarized the steps taken in its investigation, in accordance with the Board's guidelines. The Hearing Committee then conducted a limited hearing in June 2009, to determine whether sufficient evidence of moral turpitude existed, and to evaluate the thoroughness of Bar Counsel's investigation into the matter. The Committee questioned Senior Assistant Bar Counsel about her level of diligence in determining that she could not prove the existence of moral turpitude, and also examined Rigas under oath to "ascertain[ ] the *bona fides* of the negotiated discipline." The Hearing Committee ultimately approved the petition in a well-reasoned fourteen-page report. On May 28, 2010, the Board issued its Report and Recommendation to this court, advising that "the negotiated discipline is appropriate and the sanction justified."

## III. Discussion

Because neither Rigas nor Bar Counsel has filed an exception to the Board's recommendation, "our review . . . is especially deferential." *In re Delaney*, 697 A.2d 1212, 1214 (D.C.1997) (quotation marks omitted); *see also In re Brown*, 851 A.2d 1278, 1279 (D.C.2004) (per curiam) (same).[1] We therefore accept the Board's Report and Recommendation approving the amended petition for negotiated discipline. We also adopt the proposed guidelines as "an approach that permits the negotiation of criminal convictions in which the absence of moral turpitude is clear [because] [t]here is little benefit in subjecting to the lengthy and painstaking process of fact-finding and appellate review a case in which no reasonable fact-finder could find moral turpitude on the facts."

In considering the issue, the Board balanced the notion that "an evidentiary hearing is simply a procedural right of the lawyer, [and] a respondent should be able to waive that protection, as [Rigas] has done," with the fact that the "moral turpitude inquiry . . . is also for the protection of the public" and it would arguably be "contrary to public policy to allow a respondent to escape this fact-finding and thereby avoid potentially mandatory disbarment." According to the Board, "it is possible to reconcile these competing considerations, provided that the Hearing Committee reviewing a proposed negotiated discipline is able to evaluate independently Bar Counsel's decision that a particular criminal conviction does not involve moral turpitude on the facts or that the proof is insufficient." We agree, and adopt the Board's recommended guidelines for addressing negotiated discipline stemming from a criminal conviction that is potentially subject to the mandatory disbarment provision of D.C.Code § 11–2503(a).

The matter presently before us is one such case where a formal, contested hearing would be of little benefit, because there is no evidence of moral turpitude on Rigas's part. Rigas served as Executive Vice President of Operations and Secretary for Adelphia Communications. In connection with his guilty plea, Rigas admitted only to signing a Form 13–D on behalf of Adelphia without conducting a reasonable inquiry regarding the source of funding for a 1999 private purchase of Adelphia common stock, despite the fact that "[o]ne's signature on the Form 13–D certifies that after reasonable inquiry and to the best of [the signer's] knowledge and belief the information is true, complete and correct." During Rigas's sentencing, the government advised that it had been unable to "convince a jury that Mr. Rigas knowingly signed documents that were false," but all parties agreed that "whatever may be the case as to Mr. Rigas's state of mind or knowledge with respect to the truth or falsity of the filing, he certainly didn't assure himself that what he was signing was true."

The Board has correctly noted that "[t]o find moral turpitude in this case, there needs to be some basis to believe that [Rigas] knew that the Form 13–D he verified contained false representations of fact . . . [and] [w]ithout that evidence, there is no intent to defraud—rather simple falsification of a document." *See In re Susman*, 876 A.2d 637, 638 (D.C.2005) (finding moral turpitude in the deliberate and intentional creation of false statements in relation to ERISA documents). We agree

---

1. Given the novel issue presented, "we are departing from the brevity of disposition that both we and D.C. Bar R. XI § 12.1(d) expect to be the norm in these cases." *In re Johnson*, 984 A.2d 176, 179 (D.C.2009).

with the Board, the Hearing Committee, and Bar Counsel that "all reasonable avenues of investigation have been pursued and that the evidence of moral turpitude is clearly insufficient." Furthermore, the recommended sanction of a one-year suspension is appropriate. *See, e.g., In re Belardi*, 891 A.2d 224, 224 (D.C.2006) (one-year suspension for pleading guilty to three counts of making false statements to a government agency); *In re Brown*, 851 A.2d 1278, 1279 (D.C.2004) (one-year suspension for conviction of securities fraud); *In re Cerroni*, 683 A.2d 150, 151 (D.C. 1996) (one-year suspension for conviction of knowingly making and submitting false statements to government agencies). Ac-cordingly, we accept the negotiated discipline, and it is

ORDERED that Michael Rigas is suspended from the practice of law in the District of Columbia for the period of one year, *nunc pro tunc* to January 25, 2007, the date on which respondent filed the affidavit required by D.C. Bar R. XI, § 14(g).

*So ordered.*