*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-BG-560

IN RE PAUL T. MENSAH, RESPONDENT.

A Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 480889)

On Report and Recommendation
of the Board on Professional Responsibility

Approving Petition for Negotiated Discipline
(BDN 11-19)

(Argued October 6, 2021                    Decided November 4, 2021)

*Hamilton P. Fox, III*, Disciplinary Counsel, for petitioner.

*Justin M. Flint*, with whom *Channing L. Shor* made an appearance, for respondent.

Before MCLEESE and DEAHL, *Associate Judges*, and STEADMAN, *Senior Judge*.

PER CURIAM: This is a negotiated-discipline case. Under D.C. Bar R. XI, § 12.1(d), this opinion may not be cited as precedent in contested-discipline cases except as provided in D.C. App. R. 28(g). This opinion may, however, be cited as precedent in negotiated-discipline cases.

Respondent Paul T. Mensah and Disciplinary Counsel entered into an agreement pursuant to which Mr. Mensah acknowledged that he recklessly misappropriated entrusted funds in two matters, entered into an impermissible fee-splitting arrangement, and failed to keep proper records. Mr. Mensah and Disciplinary Counsel also agreed to a sanction of a three-year suspension with a requirement that Mr. Mensah demonstrate fitness to practice law before being reinstated. We accept the recommended discipline.

## I.

A Hearing Committee recommended that this court approve the negotiated-discipline agreement. The Hearing Committee acknowledged that in *In re Addams*, 579 A.2d 190 (D.C. 1990) (en banc), this court held that intentional misappropriation and reckless misappropriation require disbarment in the absence of extraordinary circumstances. The Hearing Committee also noted that it was undisputed that there were no "extraordinary circumstances" in this case within the meaning of *Addams*. The Hearing Committee concluded, however, that the negotiated-discipline process permits imposition of a sanction less stringent than *Addams* would otherwise require,

as long as the agreed-upon sanction is "justified, and not unduly lenient."  Board Prof. Resp. R. 17.5(a)(iii); *see also* D.C. Bar R. XI, § 12.1(c) (directing Hearing Committee in negotiated-discipline cases to determine whether "[t]he sanction agreed upon is justified").  The Hearing Committee determined that the agreed-upon sanction was justified and not unduly lenient.  In support of that conclusion, the Hearing Committee explained that (1) the agreed-upon sanction of a three-year suspension with fitness requirement is the second-harshest available sanction; (2) in practical effect, disbarment amounts to a five-year suspension with fitness requirement; (3) there were no aggravating factors in Mr. Mensah's case; (4) Mr. Mensah had no prior discipline; (5) Mr. Mensah was entirely forthcoming and cooperative; (6) no client or third party had been harmed or had complained; and (7) Mr. Mensah's willingness to enter into a negotiated disposition aided the disciplinary process, by avoiding undue consumption of time and resources.  In the petition for negotiated disposition, Disciplinary Counsel noted additional mitigating circumstances:   after Mr. Mensah discovered the misappropriation, he acknowledged the misconduct, brought the misconduct to Disciplinary Counsel's attention, hired a bookkeeper at his own expense to provide an accounting, and deposited personal funds to return the misappropriated funds.

After the parties filed a motion seeking approval of the negotiated-discipline agreement, the court requested the views of the Board on Professional Responsibility. D.C. Bar R. XI, § 12.1(d) ("The Court in exceptional cases may request the views of the Board concerning the appropriateness of a negotiated disposition."). The Board responded by supporting the petition for negotiated discipline. The Board acknowledged that *Addams* would require disbarment if this were a contested case. The Board agreed with the Hearing Committee, however, that additional flexibility was permissible in the context of negotiated discipline and that the agreed-upon sanction in this case was justified and not unduly lenient.

## II.

In *Addams*, this court, sitting en banc, held that

> in virtually all cases of misappropriation, disbarment will be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence. While eschewing a *per se* rule, we adhere to the presumption laid down in our prior decisions and shall regard a lesser sanction as appropriate only in extraordinary circumstances. We have found such circumstances in *In re Kersey*, 520 A.2d 321 (D.C. 1987), and may find other circumstances calling for a lesser sanction in the future. But, as a matter of course, the mitigating factors of the usual sort, *see, e.g.*, *In re Reback*, 513 A.2d 226, 233 (D.C. 1986) (en banc), will suffice to overcome the presumption of disbarment only if they are especially strong and, where there are aggravating factors,

they substantially outweigh any aggravating factors as well.

579 A.2d at 191.

In adopting that view, the court in *Addams* emphasized the importance of avoiding the "erosion of public confidence in the integrity of the bar" and concluded that, "where client funds are involved, a more stringent rule is appropriate." 579 A.2d at 198.

The decision in *Addams* has generated substantial controversy and criticism over the years. *See, e.g.*, *In re Gray*, 224 A.3d 1222, 1234-35 (D.C. 2020) (referring to *Addams* as "inflexible and sometimes harsh," but also explaining rationale for decision) (per curiam); *id.* at 1225 n.1 (noting that four Board members thought sanction mandated by *Addams* was too harsh); *In re Ahaghotu*, 75 A.3d 251, 258-59 (D.C. 2013) (referring to "a continuing current of discontent" with *Addams*, but noting that *Addams* was binding on division); *In re Pleshaw*, 2 A.3d 169, 174-75 (D.C. 2010) (noting "oddity" of result required by *Addams* but also noting that *Addams* was binding); *In re Bach*, 966 A.2d 350, 351-53 (D.C. 2009) (treating Board as implicitly asking court to reconsider *Addams*, noting that *Addams* was binding, and quoting statement from earlier case that "[i]ndividual members of this division believe the result *Addams* dictates in this case is a harsh one") (ellipses omitted;

quoting *In re Pels*, 653 A.2d 388, 398 (D.C. 1995)); *In re Bach*, 966 A.2d at 353-57 (Ferren, J., concurring) (urging reconsideration of *Addams*); *In re Berryman*, 764 A.2d 760, 765 (D.C. 2000) (noting that Board took position that *Addams* is "too inflexible") (internal quotation marks omitted); *id.* at 774 (Farrell, J., concurring) (declining to endorse Board's position that *Addams* is too inflexible); *In re Pierson*, 690 A.2d 941, 951 (D.C. 1997) (Schwelb & Ruiz, JJ., concurring) (describing rule of *Addams* as "far too inflexible" and "harsh").

## III.

In 2008, this court established procedures to govern negotiated discipline. D.C. Bar R. XI, § 12.1. Under those procedures, an attorney and Disciplinary Counsel can enter into an agreement stipulating that the attorney violated specified Rules of Professional Conduct and agreeing upon an appropriate sanction. *Id.* § 12.1(a), (b). A Hearing Committee reviews the agreement to determine whether (1) the attorney's consent was knowing and voluntary, (2) the underlying facts support the misconduct and sanction reflected in the agreement, and (3) the sanction is "justified." *Id.* § 12.1(c). If the Hearing Committee recommends approval of the

agreement, this court "review[s] the recommendation in accordance with its procedures for the imposition of uncontested discipline." *Id.* § 12.1(d).

Under the procedures for imposition of uncontested discipline, "if no exceptions are filed to the Board's report, the [c]ourt will enter an order imposing the discipline recommended by the Board upon the expiration of the time permitted for filing exceptions." D.C. Bar R. XI, § 9(h)(2). "This rule is not absolute—we would not impose discipline that is clearly against the law or the public interest, for example, merely because no party took exception to it . . . ." *In re Stephens*, 247 A.3d 698, 701 (D.C. 2021) (per curiam). Nevertheless, if "there are no exceptions to the Board's report and recommendation, our deferential standard of review becomes even more deferential." *In re Viehe*, 762 A.2d 542, 543 (D.C. 2000) (per curiam).

If the court adopts recommended negotiated discipline, the court will explain its decision in a brief per curiam opinion. D.C. Bar R. XI, § 12.1(d). As previously noted, however, opinions in negotiated-discipline cases generally may not be cited as precedent in contested-discipline cases. *Id.*

## IV.

We first consider whether the negotiated-discipline process permits imposition of a sanction that is less stringent than our decision in *Addams* would otherwise require in cases of contested discipline. We hold as a matter of law that the negotiated-discipline process does permit a somewhat more flexible approach to the appropriate sanction in cases of reckless misappropriation. *See, e.g.*, *In re Rachal*, 251 A.3d 1038, 1041 (D.C. 2021) (court does not defer to Board on Professional Responsibility on issues of law).

The negotiated-discipline process is designed to encourage efficient and timely resolution of attorney-discipline matters. Disciplinary Counsel argues that, in order to achieve that purpose, the negotiated-discipline process must permit imposition of sanctions that are somewhat less stringent than might otherwise have been required in a contested-discipline cases, at least in a negotiated-discipline proceeding involving reckless misappropriation otherwise controlled by *Addams*. More specifically, Disciplinary Counsel contends that affording such flexibility will (1) provide incentives for attorneys to agree to negotiated discipline, thereby conserving scarce resources and reducing delay in the disciplinary process; and (2)

reflect appropriate recognition of the mitigating nature of an attorney's willingness to acknowledge misconduct and accept an appropriate sanction. The Board, the Hearing Committee, and Mr. Mensah all support Disciplinary Counsel's arguments on these points. We are likewise persuaded.

Moreover, three structural features persuade us that the negotiated-discipline process necessarily contemplates some additional flexibility in determining an appropriate sanction. First, under the negotiated-discipline process, the test is whether the agreed-upon sanction is "justified." D.C. Bar R. XI, § 12.1(c)(3). That test by its terms suggests some flexibility in comparing what would be required in contested-discipline cases. *Id.* § (9)(h)(1) (requiring inquiry into whether recommended discipline would "foster a tendency toward inconsistent dispositions"). Second, as already noted, negotiated-discipline recommendations are reviewed by this court with considerable deference. *In re Viehe*, 762 A.2d at 543. Third, also as already noted, this court's decisions in negotiated-discipline cases are not generally citable as precedent in contested-discipline cases. D.C. Bar R. XI, § 12.1(d). The last point in particular seems telling, because we see one obvious reason for precluding reliance on negotiated-discipline cases as precedent in contested-discipline cases: the sanctions imposed in negotiated-discipline cases

may in some cases be less stringent than would otherwise have been appropriate in a contested-discipline case.

We do not mean to suggest that the sanctions in negotiated-discipline cases may become completely unmoored from the sanctions that would be appropriate in contested-discipline cases. The negotiated-discipline process itself reflects numerous procedural constraints intended to ensure the bottom-line requirement that any sanction imposed be "justified." D.C. Bar R. XI, § 12.1(c)(3). Specifically, (1) the petition for negotiated discipline must provide a clear factual basis for the proposed discipline, *id.* § 12.1(b)(1); (2) the petition must also include a statement explaining the basis for the agreed-upon proposed sanction, including citation to relevant precedent, *id.* § 12.1(b)(1)(iv); (3) the petition is subject to review by a Hearing Committee and (upon request of the court) by the Board, *id.* § 12.1(c), (d); and (4) this court must ultimately approve the negotiated discipline, *id.* § 12.1(d).

Our cases make clear that this court's approval of negotiated discipline is not automatic, and that instead the court scrutinizes the appropriateness of the agreed-upon sanction in negotiated-discipline cases. In *In re Harris-Lindsey*, 19 A.3d 784 (D.C. 2011) (per curiam), we declined to accept an agreed-upon sanction of a one-

year suspension, partially stayed in favor of probation, for what the parties characterized as negligent misappropriation. Although a Hearing Committee recommended approval, this court invited the views of the Board. *Id.* at 784. The Board opposed approval, expressing concern that further factual development was needed to determine whether Ms. Harris-Lindsey's misappropriation was negligent or instead reckless, which might be critical to determining the proper sanction. *Id.* at 784-85. Agreeing with the Board, this court rejected the petition for negotiated discipline. *Id.*

A second case, *In re Rigas*, 9 A.3d 494 (D.C. 2010) (per curiam), involved the intersection between negotiated discipline and the statutory requirement of disbarment for attorneys convicted of a crime of moral turpitude. D.C. Code § 11-2503(a) (2012 Repl.). To prevent the possibility that negotiated discipline could operate to circumvent that statutory requirement, the Board adopted guidelines providing that a Hearing Committee could approve negotiated discipline in cases involving criminal convictions only if the Hearing Committee certified

> (1) that the crime does not involve moral turpitude *per se*; (2) that Bar Counsel has exhausted all reasonable means of inquiry to find proof in support of moral turpitude, and explaining those efforts; (3) that Bar Counsel does not believe that there is sufficient evidence to prove moral turpitude on the facts; (4) that all of the facts relevant to a

> determination of moral turpitude are set forth in the petition; and (5) that any cases regarding the same or similar offenses have been cited in the petition.

*Rigas*, 9 A.3d at 497.  This court adopted the Board's guidelines.  *Id.* at 498.

As the foregoing should make clear, our ruling in this case is narrow.  We hold that the negotiated-discipline process in certain circumstances permits some flexibility in determining the sanction to be imposed.  In particular, we hold that such flexibility may in certain circumstances permit a sanction of less than disbarment in negotiated-discipline cases involving reckless misappropriation, even if the other circumstances of the case did not rise to the level of "extraordinary circumstances" as that phrase has been understood in the context of contested reckless-misappropriation cases.  We express no view as to whether, and if so in what circumstances, the negotiated-discipline process could permit imposition of a sanction of less than disbarment in a case involving intentional misappropriation in the absence of exceptional circumstances.

## V.

Finally, we must determine whether the agreed-upon sanction in this case is justified under all of the circumstances. Both the Hearing Committee and the Board have determined that the agreed-upon sanction is justified. Essentially for the reasons stated by the Hearing Committee and the Board, we conclude that the agreed-upon sanction is justified under the circumstances of this case.

Accordingly, it is

ORDERED that respondent Paul T. Mensah is hereby suspended from the practice of law in the District of Columbia for three years, with reinstatement conditioned on a showing of fitness. Under D.C. Bar R. XI, §§ 14(g) and 16(c), Mr. Mensah will not be eligible to apply for reinstatement until three years after he files an affidavit that complies with § 14.

*So ordered.*